IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JAMES PORTER, et al.,

                Plaintiff                                 CIVIL ACTION NO.

      v.                                         13-2008

CITY OF PHILADELPHIA, et al.,

                Defendants

## ORDER

AND NOW, this_____ day of _____, 2018, upon consideration of
Plaintiff's **EMERGENCY MOTION FOR RECONSIDERATION TO INCLUDE COUNT II
MONELL CLAIM UNDER 42 U.S.C. § 1983 AND COUNT XI CIVIL CONSPIRACY OF
THE COMPLAINT BEING PART OF THIS TRIAL AND THE PROPOSED CHARGES AND
JURY VERDICT FORM PROVIDED BY PLAINTIFF PORTER BEING THE
INSTRUCTIONS TO THE JURY FOR DAMAGES.** It is hereby ORDERED the Motion is
_____

BY THE COURT:

_____

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JAMES PORTER, et al.,

        Plaintiff                         CIVIL ACTION NO.

v.                                        13-2008

CITY OF PHILADELPHIA, et al.,

        Defendants

**EMERGENCY MOTION FOR RECONSIDERATION TO INCLUDE COUNT II MONELL CLAIM UNDER 42 U.S.C. § 1983 AND COUNT XI CIVIL CONSPIRACY OF THE COMPLAINT BEING PART OF THIS TRIAL AND THE PROPOSED CHARGES AND JURY VERDICT FORM PROVIDED BY PLAINTIFF PORTER BEING THE INSTRUCTIONS TO THE JURY FOR DAMAGES.**

Plaintiff James Porter appearing Pro-SE in this case has filed an Emergency

Motion for Reconsideration to include Count II Monell Claim under 42 U.S.C. §

1983 and Count XI Civil Conspiracy of the complaint (Doc 1, Exhibit A) being part

of this trial and the proposed charges and Jury Verdict Form provided by Plaintiff

Porter (Doc 72 Exhibit B) being the instructions to the jury for damages. By further

argument, please see the proposed Memorandum of Law.

Sincerely,

James E. Porter

121 Knollwood Lodge Rd

Hot Springs, AR. 71913

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JAMES PORTER, et al.,

        Plaintiff                  CIVIL ACTION NO.

v.                                13-2008

CITY OF PHILADELPHIA, et al.,

        Defendants

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S EMERGENCY MOTION FOR RECONSIDERATION TO INCLUDE COUNT II MONELL CLAIM UNDER 42 U.S.C. § 1983 AND COUNT XI CIVIL CONSPIRACY OF THE COMPLAINT BEING PART OF THIS TRIAL AND THE PROPOSED CHARGES AND JURY VERDICT FORM PROVIDED BY PLAINTIFF PORTER BEING THE INSTRUCTIONS TO THE JURY FOR DAMAGES.**

Plaintiff James Porter appearing pro- se before this Honorable Court, is

requesting an EMERGENCY MOTION FOR RECONSIDERATION TO INCLUDE COUNT

II MONELL CLAIM UNDER 42 U.S.C. § 1983 AND COUNT XI CIVIL CONSPIRACY OF

THE COMPLAINT BEING PART OF THIS TRIAL AND THE PROPOSED CHARGES AND

JURY VERDICT FORM PROVIDED BY PLAINTIFF PORTER BEING THE INSTRUCTIONS

TO THE JURY FOR DAMAGES.

## I.    INTRODUCTION

The above request arises from the hearing the morning of jury selection

for this case on March 29th, 2018 with a scheduled trial date of April 2,

2018. There were a number of Motions in Limine with respect to this case. This Honorable Court decided ruling on the Motions in Limine after the Jury Selection (Doc 78). Although this Honorable Court does not list the action in question in (Doc 78), prior to the Jury Selection this Honorable Courts states on the record since Plaintiff did not include a Monell Claim in his Pretrial Memorandum (Doc 53) Plaintiff will be precluded from charging defendant Philadelphia with a Monell claim or Civil Conspiracy.

## II.   SUMMARY

This case has been before This Honorable Court in a stay status since 4/16/13. This Honorable Court lifted the stay in March of 2017. The Attorney for the Plaintiff's Brian Zeiger filed a Motion to withdraw from representing Plaintiff Porter while continuing representation for Marilynn Sankowski Plaintiff Porter's mother. The Motion was granted by this Honorable Court. Plaintiff Porter has been representing himself, since the motion to withdraw filed by Attorney Brian Zeiger was granted. During the summer of 2017, Plaintiff Porter attempted to file two amended complaints both were denied by this Honorable Court. Discovery for this case began in September of 2018 and concluded mid-

December 2017.  The Final Pre-trial conference was ordered by this

Honorable Court on January 25, 2018.  Defendants on the case have

been represented by City of Philadelphia Counsel Brock Atkins since

March of 2017.  Attorney Atkins was present during Discovery and sat in

on all but two of the depositions taken during discovery from September

until December of 2017.  Attorney Atkins requested to file a Dispositive

Motion on January 25th, 2018 during the Final Pre-trial Conference and

this Honorable Court Denied his request and stated we are going to trial.

The scheduling Order on January 25th 2018 from the Final Pre-trial

Conference required Plaintiff to file their Pretrial Memorandum by

February 5, 2018 (Doc 53) and the Defendants to file their Pretrial

Memorandum by February 15th 2018.  Another requirement within the

scheduling order of January 25, 2018 was for Plaintiffs and Defendants

to file their "points of charge, voir dire and Jury verdict forms (Doc 72)

by March 26th 2018".  Plaintiff Porter was advised by this Honorable

Court on January 25, 2018 to use the model provide by the Third Circuit

for filing points of charge.  <u>The Third Circuit Court of Appeal suggested

jury instructions 1983</u> website was provided at the time to Plaintiff

Porter by Plaintiff Sankowski's Attorney Brian Zeiger.  Plaintiff Porter got

all his instructions from the site located at

http://.ca3.uscourts.gov/civiljuryinstructions/toc_and_instructions.htm.


III.   **LEGAL ARGUMENT**

Plaintiff Porter argues this Honorable Court's Sua Sponte ruling on

eliminating Plaintiff Porter's Count II  1983 action and Count XI of civil

conspiracy is prejudicial to Plaintiff Porter for a myriad of reasons.

  First and foremost, this Honorable Court after the Jury Selection on

March 29, 2018, The Judge acknowledges he has not read plaintiffs

points of charge, voir dire, or suggested jury instruction. (Doc 72

Exhibit B)

    Second, the suggested points of charge filed by Plaintiff Porter come

directly from **The Third Circuit Court of Appeal suggested jury**

**instructions 1983,** advised by this Honorable Court.  The footnotes

within Plaintiff Porter's suggest points of charge are listed with the

designated charge # of the Third Circuit Court of Appeal suggested jury

instruction 1983 at the bottom for each charge. (Exhibit C gives the

actual charge listed in **The Third Circuit Court of Appeal suggested jury**

**instructions 1983)**

Third, since March of 2017, the Defense never filed a motion, motion in Limine or any formal objection with respect to Count II or Count XI of Plaintiff's original complaint, pretrial memorandum or Plaintiff's suggested points of charge.

Fourth, this Honorable Court reasoning for this matter is Plaintiff failed to list the Monell Claim and Civil Conspiracy within his Pretrial Memorandum. (Doc 53) (Exhibit D what is stated in the Pretrial Memorandum verbatim, but does not include all the Exhibits or witnesses)

Exhibit D in bold is what was stated verbatim **"Plaintiff Porter seeks compensatory damages incurred by the policy/custom from the City of Philadelphia's Sheriff's Department, employees under 42 U.S.C. § 1983 (Count 1 and Count II and Count V) protecting Plaintiff Porter's Federal Constitutional Rights under the 1st, 4th, and 14th amendment of the United States Constitution.  In addition, Plaintiff Porter seeks damages for Count III Excessive Force against Defendants Chew, Stewart, Buscillo and Bengochea and the state claim count XI of Civil Conspiracy against Defendants Chew, Stewart, Buscillo, Bengochea** (Buscillo and

Bengochea were removed as Defendants for Civil Conspiracy and replaced by Barbara Deeley).

## IV.  CONCLUSION

For the reasons listed above it is respectfully requested for this Honorable Court to Grant Plaintiff's Emergency Motion for Reconsideration TO INCLUDE COUNT II MONELL CLAIM UNDER 42 U.S.C. § 1983 AND COUNT XI CIVIL CONSPIRACY OF THE COMPLAINT BEING PART OF THIS TRIAL AND THE PROPOSED CHARGES AND JURY VERDICT FORM PROVIDED BY PLAINTIFF PORTER BEING THE INSTRUCTIONS TO THE JURY FOR DAMAGES.

Respectfully,

James E. Porter Sr
121 Knollwood Lodge Rd.
Hot Springs, AR. 71913
501-693-4208
porterbuilt@aol.com

Exhibit    A

Count II Monell Claim and Count XI Civil Conspiracy

From Original Complaint

Process Clause, and Substantive Due Process rights of the Fourteenth Amendment, and 42 U.S.C. Section 1983.

29. Defendants' actions as stated herein denied Plaintiffs' right to due process in violation of the United States Constitution, the Fourth Amendment, the Due Process Clause of the Fourteenth Amendment, and 42 U.S.C. Section 1983.

30. Defendants' actions were a factual cause of and/or caused Plaintiff's substantial damages and harm. (See above).

**WHEREFORE**, Plaintiffs demands judgment against Defendants for such sums as would reasonably and properly compensate them for injuries in an amount in excess of Two Million ($2,000,000.00) Dollars together with delay damages, interest, costs and attorneys' fees and punitive damages (but no punitive damages against Defendant Philadelphia).

### COUNT II -
### MONELL CLAIM UNDER 42 U.S.C. § 1983
### PLAINTIFFS v. DEFENDANT PHILADELPHIA

Plaintiffs alleges each and every allegation contained in paragraphs 1 - 30 of this Complaint and incorporates them herein by reference as if the same were set forth at length.

31. The Plaintiffs believe and therefore aver that Defendant Philadelphia, has adopted and maintained for many years a recognized and accepted policy, custom and/or practice of condoning and/or acquiescing in denying free speech, equal protection of the law, condoning excessive force, false arrest,

and subjecting its citizens to the same type of treatment to which Plaintiff was subjected.   Said policies, customs and practices violate the First, Fourth and Fourteenth Amendments of the Constitution of the United States as well as federal statutory law and Pennsylvania law.

32.  The Plaintiffs believe and therefore aver that the Defendant Philadelphia, has adopted and maintained for many years, a recognized and accepted policy, custom and/or practice of systematically failing to properly train, investigate, supervise and discipline its employees, including the individual Defendants, regarding individuals' right to free speech, equal protection and to be free from being falsely arrested with excessive force, which policy and/or custom and/or practice violates the First, Fourth and Fourteenth Amendment of the Constitution of the United States, the laws of the United States and of the Commonwealth of Pennsylvania.

33.  Defendant   Philadelphia,   has   been   deliberately indifferent to the rights of its citizens to be given free speech, equal protection of the law and not be subject to excessive force, which deliberate indifference violates the Plaintiff's rights under the First, Fourth and Fourteenth Amendments to the Constitution of the United States, the laws of the United States and of the Commonwealth of Pennsylvania.

34.   The Plaintiffs believe and therefore aver, that at all material times, Defendant Philadelphia, knew or should have known of the above described policy, custom and practice of the Philadelphia Sheriff's Department, and that its Sheriffs engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like Plaintiffs, and that they deliberately, knowingly and intentionally failed to take measures to stop or limit the policy, custom and practice and therefore acquiesced in, and were deliberately indifferent to, the aforementioned unconstitutional conduct and policy.

35.   By failing to take action to stop or limit the policy and/or custom and/or practice by remaining deliberately indifferent to the systematic abuse which occurred in accordance with and as a direct and proximate result of the policy, Defendant Philadelphia condoned, acquiesced in, participated in, and perpetrated the policy in violation of the Plaintiffs' rights under the First, Fourth and Fourteenth Amendments to the Constitution of the United States, the laws of the United States and of the Commonwealth of Pennsylvania.

36.   The conduct of Defendant Philadelphia and/or the conduct of defendants' employees or agents, including the Sheriff, and/or policy maker for the Defendant Philadelphia, were a factual cause of and/or the cause of the harm and damages sustained by Plaintiffs. (See above).

**WHEREFORE**, Plaintiffs demands compensatory and punitive damages against Defendants, for such sums as would reasonably and properly compensate them for injuries in an amount in excess of Two Million ($2,000,000.00) Dollars together with delay damages, interest, costs and attorneys' fees.

**COUNT III - EXCESSIVE FORCE**
**42 U.S.C. § 1983**
**PLAINTIFFS v. DEFENDANTS BARBARA DEELEY, DARYLL STEWART, ED**
**CHEW, WILLIAM BENGOCHEA, GUERINO BUSILLO, JAMES MCCARRIE,**
**ANGELLINEL BROWN, PARIS WASHINGTON**

Plaintiffs allege each and every allegation contained in paragraphs 1 - 36 of this Complaint and incorporates them herein by reference as if the same were set forth at length.

37. Plaintiffs believe and therefore aver the force used upon them was unnecessary and more force than was reasonable and necessary under the circumstances.

38. Plaintiffs believe and therefore aver that Defendants, acting in concert and conspiracy with each other, have by the aforementioned actions deprived Plaintiffs of their constitutional and statutory rights under the Fourth Amendment.

39. Defendants' actions were a factual cause of and/or caused Plaintiffs' substantial damages and harm. (See above).

**WHEREFORE**, Plaintiffs demands judgment against Defendants for such sums as would reasonably and properly compensate them

Million ($2,000,000.00) Dollars together with delay damages, interest, costs and punitive damages

### COUNT XI – CIVIL CONSPIRACY—STATE LAW CLAIM
PLAINTIFFS v. DEFENDANTS BARBARA DEELEY, DARYLL STEWART, ED CHEW, WILLIAM BENGOCHEA, GUERINO BUSILLO, JAMES MCCARRIE, ANGELLINEL BROWN, PARIS WASHINGTON

Plaintiffs alleges each and every allegation contained in paragraphs 1 – 63 of this Complaint and incorporates them herein by reference as if the same were set forth at length.

64. Plaintiffs believe and therefore aver that Defendants, through their willful actions, as more fully set forth in the preceding paragraphs of this Complaint, did intentionally conspire, while acting within the course and scope of their authority, to assault and batter, unlawfully assault, arrest, imprison and maliciously prosecute Plaintiff, which ultimately caused Plaintiff substantial damages and harm.

65. Defendants civil conspiracy for their malicious, intentional and/or reckless actions were a factual cause of and/or caused Plaintiffs' substantial damages and harm. (See above).

**WHEREFORE,** Plaintiffs demands compensatory and punitive damages against Defendants, for such sums as would reasonably and properly compensate them for injuries in excess of Two

Million ($2,000,000.00) Dollars together with delay damages, interest, costs and punitive damages.

Respectfully submitted,

BY: _____

LEVIN & ZEIGER, LLP
BY: BRIAN J. ZEIGER
IDENTIFICATION NO.: 87063
123 S. BROAD STREET, SUITE 1200
PHILADELPHIA, PENNSYLVANIA 19109
215.825.5183
zeiger@levinzeiger.com

Case ID: 121203214

Exhibit  B

Plaintiff Porter's proposed charges, voir dire, jury verdict form

Submitted March 26, 2018

## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JAMES PORTER, et al.,

           Plaintiff                     CIVIL ACTION NO.

        v.          **FILED**           13-2008

CITY OF PHILADELPHIA, et al.,    MAR 2 6 2018

       Defendants      KATE BARKMAN, Clerk
                    By_____ Dep. Clerk

## PROPOSED POINT FOR CHARGE, VOIR DIRE, JURY VERDICT FORMS

Plaintiff James Porter (Pro-Se) submits the following Points for Charge, Voir Dire and Jury Verdict Forms.

### INTRODUCTION

#### Section 1983[1]

James Porter is suing under Section 1983, a civil rights law passed by Congress that provides a remedy to persons who have been deprived of their federal constitutional rights under color of state law.

---

[1] Third Circuit Court of Appeal suggested jury instructions Section 1983 @ 4.1
http://www.ca3.uscourts.gov/civiljuryinstructions/toc_and_instructions.htm.

1

## BURDEN OF PROOF-PREPONDERANCE OF THE EVIDENCE[2]

This is a civil case. James Porter is one of parties who brought this lawsuit. City of Philadelphia, Barbara Deeley, Ed Chew, Darrell Stewart are the parties against whom the lawsuit was filed.  James Porter has the burden of proving his case by what is called the preponderance of the evidence.  That means James Porter has to prove to you, in light of all the evidence, that what he claims is more likely so than not so.  To say it differently:  if you were to put the evidence favorable to James Porter and the evidence favorable to the Defendants on opposite sides of the scales, James Porter would have to make the scales tip somewhat on his side.  If you find after considering all the evidence that a claim or fact is more likely so than not so, then the claim or fact has been proved by a preponderance of the evidence.

In determining whether any fact has been proved by a preponderance of evidence in the case you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

---

[2] Third Circuit Court of Appeal suggested Section 1983 jury instructions 4.2, referring to Third Circuit Court of Appeal suggested general jury instructions in civil actions 1.10

2

You may have heard of the term "proof beyond a reasonable doubt." That is a stricter standard of proof and it applies only to criminal cases. It does not apply in civil cases such as this. So you should put it out of your mind. On certain issues called affirmative defenses, Barbara Deeley, Ed Chew, and Darrell Stewart has the burden of proving the elements of the defense by a preponderance of the evidence. I will instruct you on the facts that will be necessary for you to find on this affirmative defense. An affirmative defense is proven if you find, after considering all evidence in this case, that Barbara Deeley, Ed Chew and Darrell Stewart has succeeded in proving that the required facts are more likely so than not so.

**NUMBER OF WITNESSES[3]**

The weight of the evidence to prove a fact does not necessarily depend on the number of witnesses who testify. What is more important is how believable the witnesses were, and how much weight you think their testimony deserves.

---

[3] Third Circuit Court of Appeal suggested Section 1983 jury instructions 3.2

## Section 1983- <u>ELEMENTS OF CLAIM</u>[4]

James Porter must prove both of the following elements by a preponderance of the evidence:

> **First**: Barbara Deeley, Ed Chew and Darrell Stewart acted under color of state law.
>
> **Second**: While acting under color of state law, Barbara Deeley, Ed Chew and Darrell Stewart deprived James Porter of federal constitutional rights.

I will now give you more details on action under color of state law, after which I will tell you the elements James Porter must prove to establish the violation of his federal constitutional rights.

---

[4] Third Circuit Court of Appeal suggested Section 1983 jury instructions 4.4.1

## Section 1983 ACTION UNDER COLOR OF STATE LAW -ACTION UNDER COLOR OF STATE LAW IS NOT IN DISPUTE[5]

The first element of James Porter's claim is that Barbara Deeley, Ed Chew and Darrell Stewart acted under color of state law.  This means that James Porter must show that Deeley, Chew and Stewart were using power that they possessed by virtue of state law.

A person can act under color of state law even if the act violates state law.  The question is whether the person was clothed with the authority of the state, by which I mean using or misusing the authority of the state.

By "state law," I mean any statue, ordinance, regulation, custom or usage of any state.  And when I use the term "state," I am including any political subdivisions of the state, such as a county or municipality, and also any state, county or municipal agencies.

Because Barbara Deeley, Ed Chew and Darrell Stewart were officials of the Commonwealth of Pennsylvania, City of Philadelphia's Sheriff Department, at the relevant time, I instruct you that they were acting under color of state law.  In other words, this element of James Porter's claim is not in dispute, and you must find that this element has been established.

---

[5] Third Circuit Court of Appeal suggested Section 1983 jury instructions 4.4.1 (version A)

## DEPRIVATION OF A FEDERAL RIGHT

The second element of James Porter's claim is that Barbara Deeley, Ed Chew, and Darrell Stewart deprived James Porter of a federal constitutional right under the First Amendment of Free Speech and/or the Fourth amendment of Excessive Force.

The Fourth Amendment to the United States Constitution protects from being subjected to excessive force while being stopped by police/sheriff deputies.  In other words, a law enforcement official may only use the amount of force necessary under the circumstances to conduct the stop.  Every person has the constitutional right not to be subjected to excessive force while being stopped by police/sheriff deputies, even if the stop is otherwise proper.

In this case James Porter claims Ed Chew and Darrell Stewart used excessive force when they stopped James Porter from speaking at a Philadelphia Sheriff Sale.  In order to establish that Ed Chew and Darrell Stewart used excessive force, James Porter must prove both of the following things by a preponderance of the evidence:

**First**:  Ed Chew and Darrell Stewart intentionally committed certain acts

**Second**:  Those acts violated James Porter's Fourth Amendment right not to be subjected to excessive force.

6

In determining whether Ed Chew and Darrell Stewart's acts constituted excessive force, you must ask whether the amount of force Ed Chew and Darrell Stewart used was the amount which a reasonable officer/city official would have used in conducting the stop under similar circumstances.  You should consider all the relevant facts and circumstances leading up to the time of the stop that Ed Chew and Darrell Stewart reasonably believed to be true at the time of the stop.  You should consider those facts and circumstances in order to assess whether there was a need for the application of force, and the relationship between that need for force, if any, and the amount of force applied.  The circumstances relevant to this assessment can include:

- The severity of the crime at issue

- Whether James Porter posed an immediate threat to the safety of Ed Chew or Darrell Stewart or others;

- The possibility that James Porter was armed;

- Whether the physical force applied was of such an extent as to lead to unnecessary injury.

- Whether Ed Chew and Darrell Stewart were allowed to use any force

- The duration of Ed Chew and Darrell Stewart's action

The reasonableness of Ed Chew and Darrell Stewart's acts must be judged from the perspective of a reasonable officer on the scene.  The law permits the officer to use only that degree of force necessary to conduct the stop.  However, not every push or shove by Law enforcement, even if it may later seem unnecessary in the peace and quiet of this courtroom, constitutes excessive force.  To be considered law enforcement, one must have arrest powers.

As I told you earlier, James Porter must prove that Ed Chew and Darrell Stewart intended to commit the acts in question; but apart from that requirement, Ed Chew and Darrell Stewart's actual motivation is irrelevant.  If the force Ed Chew and Darrell Stewart used was unreasonable, it does not matter whether Ed Chew and Darrell Stewart had good motivations.  And an officer/ city official's improper

motive will not establish excessive force if the force used was objectively reasonable.

What matters is whether Ed Chew and Darrell Stewart's acts were objectively reasonable in light of the facts and circumstances confronting defendant.

**Section 1983- ACTION UNDER COLOR OF STATE LAW B DETERMINING WHETHER A PRIVATE PERSON CONSPIRED WITH A STATE OFFICIAL[6]**

---

[6]Third Circuit Court of Appeal suggested Section 1983 jury instructions 4.4.3

Barbara Deeley is ~~not~~ a state official. ~~However~~ James Porter alleges that Barbara Deeley

acted under a color of state law by conspiring with one or more state officials to deprive

James Porter of a Federal right.

A conspiracy is an agreement between two or more people to do something illegal. A

person who is ~~not~~ a state official acts under color of state law when she enters into a

conspiracy, involving one or more state officials, to do an act that deprives a person of

federal constitutional rights.

To find a conspiracy in this case, you must find that James Porter has proved both of

the following by a preponderance of the evidence:

**First**: Barbara Deeley in some manner with Darrell Stewart and/or Ed Chew to
do an act that deprived James Porter the right to Free Speech by making an
announcement at a Philadelphia Sheriff Sale.
**Second**: Barbara Deeley or a co-conspirator engaged in at least one act in
furtherance of the conspiracy

As I mentioned, the first thing that James Porter must show in order to prove a

conspiracy is that Barbara Deeley, Darrell Stewart and/or Ed Chew agreed in some

manner to do an act that deprived James Porter of his right to free speech in a public

place by making an announcement to the general public.

9

Mere similarity of conduct among various persons, or the fact that they may have associated with each other, or may have discussed some common aims or interests, is not necessarily proof of a conspiracy. To prove a conspiracy, James Porter must show members of the conspiracy came to a mutual understanding to do the act that violated James Porter's right to Free Speech by making an announcement to the general public. The agreement can be either express or implied. James Porter can prove the agreement by presenting testimony from a witness who heard Barbara Deeley discussing the agreement with Ed Chew or Darrell Stewart; but James Porter can also prove the agreement without such testimony, by presenting evidence of circumstances from which the agreement can be inferred. In other words, if you infer from the sequence of events that it is more likely than not that Barbara Deeley, Ed Chew and Darrell Stewart agreed to do an act that deprived James Porter of his right to Free Speech by making an announcement to the general public at a Philadelphia Sheriff Sale, then James Porter has proved the existence of the agreement.

In order to find an agreement, you must find that there was a jointly accepted plan, and that Barbara Deeley, Darrell Stewart and/or Ed Chew knew the plan's essential nature and general scope. A person who has no knowledge of a conspiracy, but who happens to act in a way which furthers some purpose of the conspiracy, does not thereby become a conspirator. However, you need not find that Barbara Deeley knew

10

the exact details of the plan or the identity of all the participants in it.  One may become

a member of a conspiracy without full knowledge of all the details of the conspiracy.

The second thing that James Porter must show in order to prove a conspiracy is that

Barbara Deeley, Darrell Stewart and/or Ed Chew a co-conspirator engaged in at least

one act in furtherance of the conspiracy.  In this case, this requirement is satisfied if you

find that Barbara Deeley or a co-conspirator did any of the following things:  Violated

policy and procedures according to the Pennsylvania Rules of Civil Procedures for Sheriff

Sales or enforced a practice that is so widespread and well-settled that it constitutes a

standard operating procedure of the City of Philadelphia's Sheriff Department.

[ Liability in Connection with the Actions of Another]

**Section 1983- LIABILITY IN CONNECTION WITH THE ACTIONS OF ANOTHER-**

**MUNICIPALITIES-CUSTOM[7]**


James Porter may prove the existence of an official custom by showing the existence

of a practice that is so widespread and well settled that it constitutes a standard

operating procedure of the City of Philadelphia's Sheriff Department.  A single action by

a lower level employee does not suffice to show an official custom.  But a practice may

---

[7] Third Circuit Court of Appeal suggested Section 1983 jury instructions 4.6.6

11

be an official custom if it is so widespread and well-settled as to have the force of law,
even if it has not been formally approved. You may find that such a custom existed if
there was a practice that was so well -settled and widespread that the policy making
officials of the City of Philadelphia either knew of it or should have known it.  I instruct
you that Barbara Deeley, Ed Chew, and Darrell Stewart are the policymaking officials for
the protocol of the general public during a Philadelphia Sheriff Sale.

If you find that such an official custom was the cause of and the moving force behind
the violation of James Porter's right to free speech by making an announcement to the
general public, then you have found that City of Philadelphia caused that violation.

## DAMAGES

I am now going to instruct you on damages.  Just because I am instructing you on how
to award damages does not mean that I have any opinion on whether or not Defendants
should be held liable.

If you find in your deliberations that none of the defendants are liable to the Plaintiff,
then you need not even consider the question of damages.

If you find a Defendant liable, then you must consider the issue of compensatory
damages

12

Compensatory damages must not be based on speculation or sympathy. They must be based on the evidence presented at trial, and only on that evidence.

The burden is on Plaintiff to prove by a preponderance of the evidence that he has suffered actual damages. Damages that have not been proven by a preponderance of the evidence may not be awarded. If you return a verdict for the Plaintiff but find that he has failed to prove by a preponderance of the evidence that he suffered any actual damages, then instead of awarding compensatory damages, you must return an award of nominal damages of at least one dollar. Nominal damages must be awarded if you find that the Defendants violated the constitutional rights of James Porter.

" If you find that the Plaintiff has been deprived of a constitutional right, you may award Presumed Damages to compensate James Porter for the deprivation. Damages for this type of injury are more difficult to measure than damages for a physical injury or injury to one's property. There are little/no medical bills or other expenses by which you can judge how much compensation is appropriate. In one sense, no monetary value we place upon constitutional rights can measure their importance in our society or compensate a citizen adequately for their deprivation. However, just because these rights are not capable of precise evaluation does not mean that an appropriate monetary amount should not be awarded.

13

The precise value you place upon any constitutional right which you find was denied to Plaintiff is within your discretion. You may wish to consider the importance of the right in our system of government, the role which this right has played in the history of our republic, and the significance of the right in the context of the activities which the plaintiff was engaged in at the time of the violation of the right[8] "

The fourth type of damages that you may consider in this action are known as "punitive damages." Punitive damages are an award of money to the Plaintiff, which has as its purpose to punish a defendant for extraordinary misconduct and to deter a defendant from repeating such conduct and in addition to serve as a warning to others and to prevent others from committing such conduct. If you find that a Defendant is liable for violating the Plaintiff's rights, then you may, but you do not have to, award punitive damages. It should be noted a municipality, as in this case City of Philadelphia can not be liable for Punitive Damages.

You may award James Porter punitive damages if you find that the acts or omissions of the defendants were done maliciously or wantonly. An act or failure to act is maliciously done if it is prompted by ill will or spite towards the injured person. An act or failure to act is wanton if done in a reckless or callous disregard of, or indifference to,

---

[8] Herrera v. Valentine, 653 F.2d 1220, 1227 (8th Cir. 1981)

the rights of the injured person.  Plaintiff has the burden of proving, by a preponderance

of the evidence that a defendant acted maliciously or wantonly with regard to the

Plaintiff's rights.

If you find by a preponderance of the evidence that the Defendant acted with

malicious intent to violate the Plaintiff's federal rights or unlawfully injure him or if you

find that a Defendant acted with a callous or reckless disregard of James Porter's rights,

then you my award punitive damages.  An award of punitive damages, however, is

discretionary; that is, if you find that the legal requirements for punitive damages are

satisfied, then you may decide to award punitive damages, or may decide not to award

them.

You must also determine whether the Defendant conduct is of the sort that calls for

deterrence and punishment.  If you find that the Plaintiff has proven by a

preponderance of the evidence that the Defendant's conduct was of the sort that calls

for deterrence and punishment, then you may decide to award punitive damages.

Punitive damages may be awarded even if the violation results only in nominal

damages.  In determining the amount of those punitive damages, you should take into

consideration the purpose of punitive damages as well as all the circumstances

surrounding the particular occurrence, including the nature of the wrongdoing (e.g.,

15

whether the offense was violent or non -violent and whether the offense posed a risk to

health or safety), the extent of harm inflicted , the intent of the Defendant, the wealth

or lack of wealth of the Defendant, and the harm that could result if the wrongdoing is

not deterred in the future.  Punitive damages must be considered with respect to each

Defendant individually and be based upon the Defendant's individual actions.  You may

not award punitive damages without an award of either nominal or compensatory

damages.

## DELIBERATIONS[9]

Please read/use the Deliberations instructions provided by the other Plaintiff in this

case. Exhibit A

## VOIR DIRE QUESTIONS

Please read/use the Voir Dire Questions provided by the other Plaintiff in this case,

the exception is in question number 12 the word "Defendant" be substituted with the

plural form  "Defendants"  Exhibit B

Respectfully Submitted,

James E. Porter Sr. Pro-Se Plaintiff

---

[9] Third Circuit Court of Appeal suggested jury instructions for deliberations in civil actions.
http://www.ca3.uscourts.gov/civiljuryinstructions/toc_and_instructions.htm.

Exhibit A

## DELIBERATIONS[14]

When you retire to the jury room to deliberate, you may take with you these instructions, your notes, and the exhibits that the Court has admitted into evidence. You should select one member of the jury as your foreperson. That person will preside over the deliberations and speak for you here in open court. You have two main duties as jurors. The first one is to decide what the facts are from the evidence that you saw and heard here in court. Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide if, under the appropriate burden of proof, the parties have established their claims. It is my job to instruct you about the law, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. This includes the instructions that I gave you before and during the trial, and these instructions. All the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way. As jurors, you have a duty to consult with each other and to deliberate with the intention of reaching a verdict. Each of you must decide the case for yourself, but only after a full and impartial consideration of all of the evidence with your fellow jurors. Listen to each other carefully. In the course of your deliberations, you should feel free to re-examine your own views and to change your opinion based upon the evidence. But you should not give up your honest convictions about the evidence

---

[14] Third Circuit Court of Appeal suggested jury instructions for deliberations in civil actions. http://www.ca3.uscourts.gov/civiljuryinstructions/toc_and_instructions.htm .

17

just because of the opinions of your fellow jurors. Nor should you change your mind just for the purpose of obtaining enough votes for a verdict.

When you start deliberating, do not talk to the jury officer, to me or to anyone but each other about the case. During your deliberations, you must not communicate with or provide any information to anyone by any means about this case. You may not use any electronic device or media, such as a cell phone, smart phone, Blackberries or iPhones, or computer of any kind; the internet, any internet service, or any text or instant messaging service like Twitter; or any internet chat room, blog, website, or social networking service such as Facebook, MySpace, LinkedIn, or YouTube, to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict.

If you have any questions or messages for me, you must write them down on a piece of paper, have the foreperson sign them, and give them to the jury officer. The officer will give them to me, and I will respond as soon as I can. I may have to talk to the lawyers about what you have asked, so it may take some time to get back to you.

One more thing about messages. Never write down or tell anyone how you stand on your votes. For example, do not write down or tell anyone that a certain number is voting one way or another. Your votes should stay secret until you are finished. Your verdict must represent the considered judgment of each juror. In order for you as a jury to return a verdict, each juror must agree to the verdict. Your verdict must be unanimous.

A form of verdict has been prepared for you. It has a series of questions for you to answer. You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will fill it in, and have your foreperson date and sign the form. You will then return to the courtroom and your foreperson will give your verdict. Unless I direct

18

you otherwise, do not reveal your answers until you are discharged. After you have reached a

verdict, you are not required to talk with anyone about the case unless I order you to do so.

Once again, I want to remind you that nothing about my instructions and nothing about

the form of verdict is intended to suggest or convey in any way or manner what I think your

verdict should be. It is your sole and exclusive duty and responsibility to determine the verdict.

Respectfully Submitted,

Dated: 3/16/2018

3/16/2018

LEVIN & ZEIGER LLP
BY:     BRIAN J. ZEIGER, ESQ.
IDENTIFICATION No.: 87063
zeiger@levinzeiger.com
1500 JFK BLVD.
SUITE 620
PHILADELPHIA, PA 19109
(215) 825-5183
zeiger@levinzeiger.com

121 Knollwood Lodge Rd
Hot Springs, Ar 71913
501 693-4208

19

Exhibit B

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JAMES PORTER, et al.,

     Plaintiff                             CIVIL ACTION NO.

    v.                                   13-2008

CITY OF PHILADELPHIA, et al.,

     Defendants

## Plaintiff James Porter's Proposed Verdict Sheet

We, the jury, unanimously find the following by a preponderance of the evidence: (if answer is yes for a particular individual continue on to next question for that individual)

(1)  Did Barbara Deeley act under color of State Law?     Answer:  Yes____  No____

     Did Ed Chew act under color of State Law?       Answer:  Yes____  No____

     Did Darrell Stewart act under color of State Law?     Answer:  Yes____  No____

(2)  Did Barbara Deeley intentionally commit an act, under color of state law, that

     violated James Porter's First Amendment right of Speech?     Yes____ No____

     Did Ed Chew intentionally commit an act, under color of state law, that

     violated James Porter's First Amendment right of Speech?     Yes____ No____

19

Did ED Chew intentionally commit an act, under color of state that violated James

Porter's Fourth Amendment right not to be subjected to excessive force?

Yes___ No___

Did Darrell Stewart intentionally commit an act, under color of state law that

Violated James Porter's First Amendment right of Speech?       Yes___ No____

Did Darrell Stewart intentionally commit an act, under color of state law that

violated James Porter's Fourth Amendment right not to be subjected to excessive

force?                                                         Yes___ No____

Did the City of Philadelphia intentionally commit an act, under color of state law,

that violated James Porter's First Amendment Right of Speech?       Yes__ No___

(3) Did Barbara Deeley's act, described in Part (2) above, cause injury to James

Porter?                                                        Yes___ No___

Did Ed Chew's act, described in Part (2) above, cause injury to James Porter?

Yes___ No___

Did Darrell Stewart's act, described in Part (2) above cause injury to James Porter?

Yes___ No___

Did the City of Philadelphia's act, described in Part (2) above cause injury to James

Porter?                                                        Yes___ No___

If you answered "Yes" to Part #3 proceed to Part 4(A) and skip Part4(B).

If you Answered "No" to Part #3, Skip Part 4(A) and proceed to Part 4(B).

20

(4) (A)  Please state the amount that will fairly compensate James Porter for any

injury he sustained as a result of Barbara Deeley's conduct.  Answer:

$_____ (Fill in Dollar figure)

Please state the amount that will fairly compensate James Porter for any injury he

sustained as a result of Ed Chew's conduct.  Answer:  $_____ (Fill in

Dollar figure)

Please state the amount that will fairly compensate James Porter for any injury he

sustained as a result of Darrell Stewart's conduct.  Answer:  $_____

(Fill in Dollar figure)

Please state the amount that will fairly compensate James Porter for any injury he

sustained as a result of City of Philadelphia's conduct.  Answer:

$_____ (Fill in Dollar figure)

(4)(B)  Because we answered "No" to Part 3 James Porter is awarded nominal damages

in the amount of $1.00

After Answering Part 4, Proceed to Part 5.

(5) (A) Did Barbara Deeley act maliciously or wantonly in violating James Porter's

rights?                                                      Yes____ No____

Did Ed Chew act maliciously or wantonly in violating James Porter's rights?

                                                             Yes___ No____

Did Darrell Stewart act maliciously or wantonly in violating James Porter's rights?

                                                             Yes___ No____

21

IF YOU ANSWERED "YES" TO PART (5)(A), PROCEED TO PART (5)(B).

OTHERWISE, PLEASE STOP.

(5)(B) Do you award Punitive Damages against Barbara Deeley?

Yes_____ No_____

If yes, in what amount? $ _____ (fill in dollar amount)

Do you award punitive damages against Ed Chew?

Yes_____ No_____

If yes, in what amount? $_____ (fill in dollar amount)

Do you award Punitive Damages against Darrell Stewart?

Yes___ No___

If yes, in what amount? $_____ (fill in dollar amount)

(5)(C) Do you award Presumed Damages against City of Philadelphia?

Yes___ No___

If yes, in what amount? $ _____(fill in dollar amount)

_____

## Certificate of Service

I, James E. Porter, as a pro-se Plaintiff certify I declare under penalty of perjury that the above **PLAINTIFFS' PROPOSED POINT FOR CHARGE, VOIR DIRE, JURY VERDICT FORMS** is true and correct to the best of my knowledge, information and belief. In addition, I have served to the following individuals listed below on March 26, 2018 in the following manner by hand delivery/electronic filing:

Shannon Zabel

City of Philadelphia Law Department

1515 Arch Street, 14 Fl

Philadelphia, PA. 19103

Attorney for Defendants

United States District Court

Eastern District of Pennsylvania

Clerks Office Room 2609

Philadelphia, Pennsylvania

Att: Steve Tomas

Brian J. Zeiger Esquire

Levin & Zeiger LLP

Two Penn Center, Suite 620

Philadelphia, PA. 19102

Attorney for Plaintiff Marilynn Sankowski

James E. Porter Sr.

121 Knollwood Lodge Rd.

Hot Springs, AR. 71913

501 693-4208

Email: porterbuilt@aol.com

Dated: March 26, 2018                    Pro-Se Plaintiff

James E. Porter Sr.

23

Exhibit    C

Actual Points of Charge from

<u>The Third Circuit Court of Appeal suggested jury instructions</u>

<u>1983</u>

1   **3.1   General Instructions For Use At End of Trial — Deliberations**

2

3   **Model**

4       When you retire to the jury room to deliberate, you may take with you [these instructions]
5   [your notes] [and] the exhibits that the Court has admitted into evidence. You should select one
6   member of the jury as your foreperson. That person will preside over the deliberations and speak for
7   you here in open court.

8       You have two main duties as jurors. The first one is to decide what the facts are from the
9   evidence that you saw and heard here in court. Deciding what the facts are is your job, not mine, and
10   nothing that I have said or done during this trial was meant to influence your decision about the facts
11   in any way.

12       Your second duty is to take the law that I give you, apply it to the facts, and decide if, under
13   the appropriate burden of proof, the parties have established their claims. It is my job to instruct you
14   about the law, and you are bound by the oath that you took at the beginning of the trial to follow the
15   instructions that I give you, even if you personally disagree with them. This includes the instructions
16   that I gave you before and during the trial, and these instructions. All the instructions are important,
17   and you should consider them together as a whole.

18       Perform these duties fairly. Do not let any bias, sympathy or prejudice that you may feel
19   toward one side or the other influence your decision in any way.

20       As jurors, you have a duty to consult with each other and to deliberate with the intention of
21   reaching a verdict. Each of you must decide the case for yourself, but only after a full and impartial
22   consideration of all of the evidence with your fellow jurors. Listen to each other carefully. In the
23   course of your deliberations, you should feel free to re-examine your own views and to change your
24   opinion based upon the evidence. But you should not give up your honest convictions about the
25   evidence just because of the opinions of your fellow jurors. Nor should you change your mind just
26   for the purpose of obtaining enough votes for a verdict.

27       When you start deliberating, do not talk to the jury officer, to me or to anyone but each other
28   about the case. During your deliberations, you must not communicate with or provide any
29   information to anyone by any means about this case. You may not use any electronic device or
30   media, such as a cell phone, smart phone [like Blackberries or iPhones], or computer of any kind;
31   the internet, any internet service, or any text or instant messaging service [like Twitter]; or any
32   internet chat room, blog, website, or social networking service [such as Facebook, MySpace,
33   LinkedIn, or YouTube], to communicate to anyone any information about this case or to conduct any
34   research about this case until I accept your verdict.

35       If you have any questions or messages for me, you must write them down on a piece of paper,

36

1    **3.2   General Instructions For Use At End of Trial — Number of Witnesses**

2

3    **Model**

4        The weight of the evidence to prove a fact does not necessarily depend on the number of
5    witnesses who testify. What is more important is how believable the witnesses were, and how much
6    weight you think their testimony deserves.

7    **Comment**

8        See Instruction 1.7, where this instruction is included as an alternative to be given as part of
9    a general instruction on credibility of witnesses at the beginning of the case.

10       This instruction is not to be given routinely, but it might be given, on request, when there is
11   a disproportionate number of witnesses on one side of the case.

38

1   **4.1**                    **Section 1983 Introductory Instruction**

2

3   **Model**

4

5       [Plaintiff][1] is suing under Section 1983, a civil rights law passed by Congress that provides

6   a remedy to persons who have been deprived of their federal [constitutional] [statutory] rights under

7   color of state law.[2]

---

[1] Referring to the parties by their names, rather than solely as "Plaintiff" and "Defendant," can improve jurors' comprehension.  In these instructions, bracketed references to "[plaintiff]" or "[defendant]" indicate places where the name of the party should be inserted.

[2] In these instructions, references to action under color of state law are meant to include action under color of territorial law.  *See, e.g., Eddy v. Virgin Islands Water & Power Auth.*, 955 F. Supp. 468, 476 (D.V.I. 1997) ("The net effect of the Supreme Court decisions interpreting 42 U.S.C. § 1983, including *Will* [*v. Michigan Department of State Police*, 491 U.S. 58 (1989),] and *Ngiraingas* [*v. Sanchez*, 495 U.S. 182 (1990)], is to treat the territories and their officials and employees the same as states and their officials and employees."), *reconsidered on other grounds*, 961 F. Supp. 113 (D.V.I. 1997).

-4-

| | |
|---|---|
| 1 | **4.2**                      **Section 1983 – Burden of Proof** |
| 2 | |
| 3 | **Model** |
| 4 | |
| 5 | *[Provide Instruction 1.10 on burden of proof, modified (if necessary) as discussed in the* |
| 6 | *Comment below.]* |
| 7 | |
| 8 | |
| 9 | **Comment** |
| 10 | |
| 11 | The plaintiff bears the burden of proof on the elements of a Section 1983 claim. *See, e.g.,* |
| 12 | *Groman v. Township of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995). The court can use Instruction |
| 13 | 1.10 to apprise the jury of this burden. |
| 14 | |
| 15 | Where there is a jury question on the issue of qualified immunity, some additional instruction |
| 16 | on burdens may occasionally be necessary. |
| 17 | |
| 18 | Although the defendant has the burden of pleading the defense of qualified immunity, *see* |
| 19 | *Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *Thomas v. Independence Tp.*, 463 F.3d 285, 293 (3d |
| 20 | Cir. 2006), the Supreme Court has not definitively established who bears the burden of proof with |
| 21 | respect to that defense, *see, e.g., Gomez*, 446 U.S. at 642 (Rehnquist, J., concurring) (construing the |
| 22 | opinion of the Court "to leave open the issue of the burden of persuasion, as opposed to the burden |
| 23 | of pleading, with respect to a defense of qualified immunity"). |
| 24 | |
| 25 | The Third Circuit has stated that the defendant bears the burden of proof on qualified |
| 26 | immunity. *See, e.g., Kopec v. Tate*, 361 F.3d 772, 776 (3d Cir. 2004) (defendant has burden to |
| 27 | establish entitlement to qualified immunity); *Beers-Capitol v. Whetzel*, 256 F.3d 120, 142 n.15 (3d |
| 28 | Cir. 2001) (same); *Karnes v. Skrutski*, 62 F.3d 485, 491 (3d Cir. 1995) (same); *Stoneking v. Bradford* |
| 29 | *Area Sch. Dist.*, 882 F.2d 720, 726 (3d Cir. 1989) (same); *Ryan v. Burlington County*, N.J., 860 F.2d |
| 30 | 1199, 1204 n.9 (3d Cir. 1988) (same). However, some other Third Circuit opinions suggest that the |
| 31 | burden of proof regarding qualified immunity may vary with the element in question.[3] For example, |
| 32 | the court has stated that "[w]here a defendant asserts a qualified immunity defense in a motion for |
| 33 | summary judgment, the plaintiff bears the initial burden of showing that the defendant's conduct |
| 34 | violated some clearly established statutory or constitutional right. . . . Only if the plaintiff carries this |
| 35 | initial burden must the defendant then demonstrate that no genuine issue of material fact remains as |
| 36 | to the 'objective reasonableness' of the defendant's belief in the lawfulness of his actions." *Sherwood* |

---

[3] As discussed below (see Comment 4.7.2), the qualified immunity analysis poses three questions: (1) whether the defendant violated a constitutional right; (2) whether the right was clearly established; and (3) whether it would have been clear to a reasonable official, under the circumstances, that the conduct was unlawful. The issue of evidentiary burdens of proof implicates only the first and third questions.

-5-

1    *v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997); *see also Hynson By and Through Hynson v. City of*
2    *Chester*, 827 F.2d 932, 935 (3d Cir. 1987) ("Although the officials claiming qualified immunity have
3    the burden of pleading and proof . . . , a plaintiff who seeks damages for violation of constitutional
4    rights may overcome the defendant official's qualified immunity only by showing that those rights
5    were clearly established at the time of the conduct at issue.").
6
7         A distinction between the burden of proof as to the constitutional violation and the burden
8    of proof as to objective reasonableness makes sense in the light of the structure of Section 1983
9    litigation.  To prove her claim, the plaintiff must prove the existence of a constitutional violation;
10   qualified immunity becomes relevant only if the plaintiff carries that burden.  Accordingly, the
11   plaintiff should bear the burden of proving the existence of a constitutional violation in connection
12   with the qualified immunity issue as well.  However, it would accord with decisions such as *Kopec*
13   (and it would not contravene decisions such as *Sherwood*) to place the burden on the defendant to
14   prove that a reasonable officer would not have known, under the circumstances, that the conduct was
15   illegal.[4]
16
17        As noted in Comment 4.7.2, a jury question concerning qualified immunity will arise only
18   when there are material questions of historical fact.  The court should submit the questions of
19   historical fact to the jury by means of special interrogatories; the court can then resolve the question
20   of qualified immunity by reference to the jury's determination of the historical facts. Many questions
21   of historical fact may be relevant both to the existence of a constitutional violation and to the
22   question of objective reasonableness; as to those questions, the court should instruct the jury that the
23   plaintiff has the burden of proof.  Other questions of historical fact, however, may be relevant only
24   to the question of objective reasonableness; as to those questions, if any, the court should instruct
25   the jury that the defendant has the burden of proof.

---

[4]  There is language in *Estate of Smith v. Marasco*, 430 F.3d 140 (3d Cir. 2005), which
may be perceived as being in tension with *Kopec*'s statement that the defendant has the burden of
proof on qualified immunity.  In *Marasco* the Court of Appeals held the defendants were entitled
to qualified immunity on the plaintiffs' state-created danger claim because the court "conclude[d]
that the Smiths cannot show that a reasonable officer would have recognized that his conduct
was 'conscience-shocking.'" *Id.* at 156.  While this language can be read as contemplating that
the plaintiffs have a burden of persuasion, it should be noted that the court was not focusing on a
factual dispute but rather on the clarity of the caselaw at the time of the relevant events. *See id.*
at 154 (stressing that the relevant question was "whether the law, as it existed in 1999, gave the
troopers 'fair warning' that their actions were unconstitutional") (quoting *Hope v. Pelzer*, 536
U.S. 730, 741 (2002)).

1   have the foreperson sign them, and give them to the jury officer. The officer will give them to me,
2   and I will respond as soon as I can. I may have to talk to the lawyers about what you have asked, so
3   it may take some time to get back to you.

4       One more thing about messages. Never write down or tell anyone how you stand on your
5   votes. For example, do not write down or tell anyone that a certain number is voting one way or
6   another. Your votes should stay secret until you are finished.

7       Your verdict must represent the considered judgment of each juror. In order for you as a jury
8   to return a verdict, each juror must agree to the verdict. Your verdict must be unanimous.

9       A form of verdict has been prepared for you. It has a series of questions for you to answer.
10  You will take this form to the jury room and when you have reached unanimous agreement as to your
11  verdict, you will fill it in, and have your foreperson date and sign the form. You will then return to
12  the courtroom and your foreperson will give your verdict. Unless I direct you otherwise, do not
13  reveal your answers until you are discharged. After you have reached a verdict, you are not required
14  to talk with anyone about the case unless I order you to do so.

15      Once again, I want to remind you that nothing about my instructions and nothing about the
16  form of verdict is intended to suggest or convey in any way or manner what I think your verdict
17  should be. It is your sole and exclusive duty and responsibility to determine the verdict.

18  **Comment**

19      The instruction is derived from Fifth Circuit 2.11 and 2.12, Eighth Circuit 3.06, former Ninth
20  Circuit 4.1, and the instruction used in the District of Delaware. *Cf.* Ninth Circuit 3.1.

21      The portion of the instruction concerning electronic media is drawn from Proposed Model
22  Jury Instructions on the Use of Electronic Technology to Conduct Research on or Communicate
23  about a Case, prepared by the Judicial Conference Committee on Court Administration and Case
24  Management in December 2009. Obviously, the relevant technologies will evolve over time; users
25  of these instructions should insert a list of current examples in the appropriate place in the
26  instructions.

27      The part of the instruction concerning unanimity may be altered if the parties consent to a
28  non-unanimous verdict. *See* Fed.R.Civ.P. 48.

**4.4.1**      **Section 1983 – Action under Color of State Law –**
                  **Action under Color of State Law Is Not in Dispute**

**Model**

**Version A** (government official):

Because [defendant] was an official of [the state of ___] [the county of ___] [the city of __ __] at the relevant time, I instruct you that [he/she] was acting under color of state law.  In other words, this element of [plaintiff's] claim is not in dispute, and you must find that this element has been established.

**Version B** (private individual):

Although [defendant] is a private individual and not a state official, I instruct you that the relationship between [defendant] and the state was sufficiently close that [he/she] was acting under color of state law. In other words, this element of [plaintiff's] claim is not in dispute, and you must find that this element has been established.

-13-

## 4.4              Section 1983 – Action under Color of State Law

### Model

The first element of [plaintiff's] claim is that [defendant] acted under color of state law. This means that [plaintiff] must show that [defendant] was using power that [he/she] possessed by virtue of state law.

A person can act under color of state law even if the act violates state law. The question is whether the person was clothed with the authority of the state, by which I mean using or misusing the authority of the state.

By "state law," I mean any statute, ordinance, regulation, custom or usage of any state. And when I use the term "state," I am including any political subdivisions of the state, such as a county or municipality, and also any state, county or municipal agencies.

### Comment

Whenever possible, the court should rule on the record whether the conduct of the defendant constituted action under color of state law.  In such cases, the court can use Instruction 4.4.1 to instruct the jury that this element of the plaintiff's claim is not in dispute.

In cases involving material disputes of fact concerning action under color of state law, the court should tailor the instructions on this element to the nature of the theory by which the plaintiff is attempting to show action under color of state law.  This comment provides an overview of some theories that can establish such action; Instructions 4.4.2 and 4.4.3 provide models of instructions for use with two such theories.

"[C]onduct satisfying the state-action requirement of the Fourteenth Amendment satisfies [Section 1983's] requirement of action under color of state law." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 935 n.18 (1982).[7]  "Like the state-action requirement of the Fourteenth Amendment, the under-color-of-state-law element of § 1983 excludes from its reach '"merely private conduct, no matter how discriminatory or wrongful."'" *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982) (quoting *Shelley v. Kraemer*, 334 U.S. 1, 13 (1948))).  Liability under Section 1983 "attaches only to those wrongdoers 'who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it.'" *National Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 191

---

[7] *See also Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 n.2 (2001) ("If a defendant's conduct satisfies the state-action requirement of the Fourteenth Amendment, the conduct also constitutes action 'under color of state law' for § 1983 purposes.").

(1988) (quoting *Monroe v. Pape*, 365 U.S. 167, 172 (1961)).  "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'"  *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)).[8]

The inquiry into the question of action under color of state law "is fact-specific."  *Groman v. Township of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995).  "In the typical case raising a state-action issue, a private party has taken the decisive step that caused the harm to the plaintiff, and the question is whether the State was sufficiently involved to treat that decisive conduct as state action. . . .  Thus, in the usual case we ask whether the State provided a mantle of authority that enhanced the power of the harm-causing individual actor."  *Tarkanian*, 488 U.S. at 192.  Circumstances that can underpin a finding of state action include the following:

- A finding of "'a sufficiently close nexus between the state and the challenged action of the [private] entity so that the action of the latter may fairly be treated as that of the State itself.'"[9]

- A finding that "the State create[d] the legal framework governing the conduct."[10]

- A finding that the government "delegate[d] its authority to the private actor."[11]

- A finding that the government "knowingly accept[ed] the benefits derived from unconstitutional behavior."[12]

---

[8] *Compare Citizens for Health v. Leavitt*, 428 F.3d 167, 182 (3d Cir. 2005) (holding that a federal regulation that "authoriz[ed] conduct that was already legally permissible" – and that did not preempt state laws regulating such conduct more strictly – did not meet the "state action requirement").

[9] *McKeesport Hosp. v. Accreditation Council for Graduate Med. Educ.*, 24 F.3d 519, 524 (3d Cir. 1994) (quoting *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351 (1974)).

[10] *Tarkanian*, 488 U.S. at 192 (citing *North Ga. Finishing, Inc. v. Di-Chem, Inc.*, 419 U.S. 601 (1975)).

[11] *Id.* (citing *West v. Atkins*, 487 U.S. 42 (1988)); *see also Reichley v. Pennsylvania Dept. of Agriculture*, 427 F.3d 236, 245 (3d Cir. 2005) (holding that trade association's "involvement and cooperation with the Commonwealth's efforts to contain and combat" avian influenza did not show requisite delegation of authority to the trade association).

[12] *Tarkanian*, 488 U.S. at 192 (citing *Burton v. Wilmington Parking Auth.*, 365 U.S. 715 (1961)).

-10-

1    • A finding that "the private party has acted with the help of or in concert with state
2    officials."[13] For an instruction on private action in concert with state officials, see Instruction
3    4.4.3.
4
5    • A finding that the action "'result[ed] from the State's exercise of "coercive power."'"[14]
6
7    • A finding that "'the State provide[d] "significant encouragement, either overt or
8    covert."'"[15]
9
10   • A finding that "'a nominally private entity . . . is controlled by an "agency of the
11   State."'"[16]
12
13   • A finding that "'a nominally private entity . . . has been delegated a public function by
14   the State.'"[17]
15
16   • A finding that "'a nominally private entity . . . is "entwined with governmental policies,"

---

[13] *McKeesport Hosp.*, 24 F.3d at 524. The Court of Appeals has explained that Supreme Court caselaw concerning "joint action or action in concert suggests that some sort of common purpose or intent must be shown.... [A] private citizen acting at the orders of a police officer is not generally acting in a willful manner, especially when that citizen has no self-interest in taking the action.... [W]illful participation ... means voluntary, uncoerced participation." *Harvey v. Plains Twp. Police Dept.*, 421 F.3d 185, 195-96 (3d Cir. 2005).

[14] *Benn v. Universal Health System, Inc.*, 371 F.3d 165, 171 (3d Cir. 2004) (quoting *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 296 (2001) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982))).

[15] *Benn*, 371 F.3d at 171 (quoting *Brentwood*, 531 U.S. at 296 (quoting *Blum*, 457 U.S. at 1004)).

[16] *Benn*, 371 F.3d at 171 (quoting *Brentwood*, 531 U.S. at 296 (quoting *Pennsylvania v. Bd. of Dir. of City Trusts of Philadelphia*, 353 U.S. 230, 231 (1957) (per curiam))).

[17] *Benn*, 371 F.3d at 171 (quoting *Brentwood*, 531 U.S. at 296); *compare Leshko v. Servis*, 423 F.3d 337, 347 (3d Cir. 2005) (holding "that foster parents in Pennsylvania are not state actors for purposes of liability under § 1983"); *Max v. Republican Committee of Lancaster County*, 587 F.3d 198, 199, 203 (3d Cir. 2009) (holding that, under the circumstances, a political committee, its affiliate and certain of its officials were not acting as state actors when they allegedly sought to chill the speech of plaintiff – a committeewoman for the political committee – in connection with the Republican primary election).

-11-

1    or [that] government is "entwined in [its] management or control.""""[18]

2

3        The fact that a defendant was pursuing a private goal does not preclude a finding that the
4    defendant acted under color of state law. *See Georgia v. McCollum*, 505 U.S. 42, 54 (1992) (noting,
5    in a case involving a question of "state action" for purposes of the Fourteenth Amendment, that
6    "[w]henever a private actor's conduct is deemed 'fairly attributable' to the government, it is likely
7    that private motives will have animated the actor's decision").

---

[18] *Benn*, 371 F.3d at 171 (quoting *Brentwood*, 531 U.S. at 296 (quoting *Evans v. Newton*, 382 U.S. 296, 299, 301 (1966))).

### 4.4.3          Section 1983 – Action under Color of State Law –
### Determining Whether a Private Person Conspired with a State Official

**Model**

[Defendant] is not a state official. However, [plaintiff] alleges that [defendant] acted under color of state law by conspiring with one or more state officials to deprive [plaintiff] of a federal right.

A conspiracy is an agreement between two or more people to do something illegal. A person who is not a state official acts under color of state law when [he/she] enters into a conspiracy, involving one or more state officials, to do an act that deprives a person of federal [constitutional] [statutory] rights.

To find a conspiracy in this case, you must find that [plaintiff] has proved both of the following by a preponderance of the evidence:

First: [Defendant] agreed in some manner with [Official Roe and/or another participant in the conspiracy with Roe] to do an act that deprived [plaintiff] of [describe federal constitutional or statutory right].

Second: [Defendant] or a co-conspirator engaged in at least one act in furtherance of the conspiracy.

As I mentioned, the first thing that [plaintiff] must show in order to prove a conspiracy is that [defendant] and [Official Roe and/or another participant in the conspiracy with Roe] agreed in some manner to do an act that deprived [plaintiff] of [describe federal constitutional or statutory right].

Mere similarity of conduct among various persons, or the fact that they may have associated with each other, or may have discussed some common aims or interests, is not necessarily proof of a conspiracy. To prove a conspiracy, [plaintiff] must show that members of the conspiracy came to a mutual understanding to do the act that violated [plaintiff's] [describe right]. The agreement can be either express or implied. [Plaintiff] can prove the agreement by presenting testimony from a witness who heard [defendant] and [Official Roe and/or another participant in the conspiracy with Roe] discussing the agreement; but [plaintiff] can also prove the agreement without such testimony, by presenting evidence of circumstances from which the agreement can be inferred. In other words, if you infer from the sequence of events that it is more likely than not that [defendant] and [Official Roe and/or another participant in the conspiracy with Roe] agreed to do an act that deprived [plaintiff] of [describe right], then [plaintiff] has proved the existence of the agreement.

In order to find an agreement, you must find that there was a jointly accepted plan, and that [defendant] and [state official] [each other conspirator] knew the plan's essential nature and general scope. A person who has no knowledge of a conspiracy, but who happens to act in a way which

-19-

furthers some purpose of the conspiracy, does not thereby become a conspirator. However, you need not find that [defendant] knew the exact details of the plan [or the identity of all the participants in it]. One may become a member of a conspiracy without full knowledge of all the details of the conspiracy.

The second thing that [plaintiff] must show in order to prove a conspiracy is that [defendant] or a co-conspirator engaged in at least one act in furtherance of the conspiracy. [In this case, this requirement is satisfied if you find that [defendant] or a co-conspirator did any of the following things: [Describe the acts alleged by the plaintiff].] [In other words, [plaintiff] must prove that [defendant] or a co-conspirator took at least one action to further the goal of the conspiracy.]

## Comment

Alternative ways to show that a private person acted under color of state law. It should be noted that demonstrating the existence of a conspiracy is not the only possible way to show that a private individual acted under color of state law. *See supra* Comment 4.4. For example, when a private person is acting, under a contract with the state, to perform a traditional public function, the question may arise whether that person is acting under color of state law. *Cf. Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 352 (1974) (discussing "exercise by a private entity of powers traditionally exclusively reserved to the State"); *Richardson v. McKnight*, 521 U.S. 399, 413 (1997) (in case involving "employees of a private prison management firm," noting that the Court was not deciding "whether the defendants are liable under § 1983 even though they are employed by a private firm").

Distinct issues concerning action under color of state law also could arise when a private person hires a public official, the public official violates the plaintiff's federal rights, and the plaintiff sues the private person for actions that the private person did not agree upon with the state official, but which the state official performed within the scope of his or her employment by the private person.[44] There is some doubt whether a private entity can be held liable under Section 1983 on a theory of respondeat superior.[45] However, even if respondeat superior liability is unavailable, a

---

[44] If the private person hires the state official to do the act that constitutes the violation, and the state official agrees to be hired for that purpose, then this constitutes action under color of state law under the conspiracy theory. *See Abbott v. Latshaw*, 164 F.3d 141, 147-48 (3d Cir. 1998).

[45] *See, e.g., Victory Outreach Center v. Melso*, 371 F.Supp.2d 642, 646 (E.D.Pa. 2004) (noting that "neither the Supreme Court nor the Third Circuit has addressed the issue of whether a private corporation can be held liable for the acts of its employees on a respondeat superior theory" in a Section 1983 case, and holding that respondeat superior liability is unavailable); *Taylor v. Plousis*, 101 F.Supp.2d 255, 263-64 & n.4 (D.N.J. 2000) (holding respondeat superior liability unavailable, but noting "a lingering doubt whether the public policy considerations

1  private entity should be liable for its employee's violation if a municipal employer would incur
2  Section 1983 liability under similar circumstances.[46] Some of the theories that could establish the
3  private employer's liability–such as deliberate indifference–could establish the private employer's
4  liability based on facts that would not suffice to demonstrate a conspiracy.
5
6          Absent evidence that the private party and the official conspired to commit the act that
7  violated the plaintiff's rights, the "color of law" question will focus on whether the private party acts
8  under color of state law *because she employs the state official*.[47] Some indirect light may be shed
9  on this question by *NCAA v. Tarkanian*, 488 U.S. 179 (1988). The dispute in *Tarkanian* arose
10 because the NCAA penalized the University of Nevada, Las Vegas for asserted violations of NCAA
11 rules (including violations by Tarkanian, UNLV's head basketball coach) and threatened further
12 penalties unless UNLV severed its connection with Tarkanian. *See id.* at 180-81. The Court noted
13 that Tarkanian presented the inverse of the "traditional state-action case," *id.* at 192: "[T]he final act
14 challenged by Tarkanian–his suspension–was committed by UNLV" (a state actor), and the dispute
15 focused on whether the NCAA acted under color of state law in directing UNLV to suspend
16 Tarkanian. The Court held that the NCAA did not act under color of state law: "It would be more
17 appropriate to conclude that UNLV has conducted its athletic program under color of the policies
18 adopted by the NCAA, rather than that those policies were developed and enforced under color of
19 Nevada law." *Id.* at 199. In so holding, the Court rejected the plaintiff's contention that "the power
20 of the NCAA is so great that the UNLV had no practical alternative to compliance with its
21 demands": As the Court stated, "[w]e are not at all sure this is true, but even if we assume that a
22 private monopolist can impose its will on a state agency by a threatened refusal to deal with it, it
23 does not follow that such a private party is therefore acting under color of state law." *Id.* at 198-99.
24
25          It is possible to distinguish *Tarkanian* from the scenarios mentioned above. In one sense,
26 *Tarkanian* might have presented a more persuasive case of action under color of state law, since the

---

underlying the Supreme Court's decision in Monell should apply when a governmental entity
chooses to discharge a public obligation by contract with a private corporation"); *Miller v. City of
Philadelphia*, 1996 WL 683827, at \*3 (E.D.Pa. Nov. 25, 1996) (holding respondeat superior
liability unavailable, and stating that "most courts that have addressed the issue have concluded
that private corporations cannot be vicariously liable under § 1983").

[46] *Cf. Thomas v. Zinkel*, 155 F. Supp.2d 408, 412 (E.D.Pa. 2001) ("Liability of [local
government] entities may not rest on respondeat superior, but rather must be based upon a
governmental policy, practice, or custom that caused the injury. . . . The same standard applies to
a private corporation, like CPS, that is acting under color of state law.").

[47] This discussion assumes that the state official acts under color of state law when he
commits the violation.

1   NCAA directed UNLV to do the very act that constituted the violation.[48]   On the other hand, a
2   person's employment of an off-duty state official might present a more persuasive case in other
3   respects, in the sense that an off-duty police officer might in fact be guided by the private employer's
4   wishes to a greater extent than UNLV would willingly be guided by the NCAA's wishes.   Thus,
5   *Tarkanian* may not foreclose the possibility that a private party may act under color of state law
6   when employing a state official, even if the private party does not conspire with the official
7   concerning the act that constitutes a violation of the plaintiff's rights.[49]
8
9         Comments on Instruction 4.4.3 regarding conspiracy. "[T]o act 'under color of' state law for
10   § 1983 purposes does not require that the defendant be an officer of the State. It is enough that he
11   is a willful participant in joint action with the State or its agents. Private persons, jointly engaged
12   with state officials in the challenged action, are acting see *[sic]* 'under color' of law for purposes of
13   § 1983 actions." *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980) (citing *Adickes v. S. H. Kress & Co.*,
14   398 U.S. 144, 152 (1970); *United States v. Price*, 383 U.S. 787, 794 (1966)); *see also Abbott v.*
15   *Latshaw*, 164 F.3d 141, 147-48 (3d Cir. 1998). "[A]n otherwise private person acts 'under color of'
16   state law when engaged in a conspiracy with state officials to deprive another of federal rights."
17   *Tower v. Glover*, 467 U.S. 914, 920 (1984) (citing *Dennis*, 449 U.S. at 27-28); *see also Adickes*, 398
18   U.S. at 152 ("Although this is a lawsuit against a private party, not the State or one of its officials,
19   . . . petitioner will have made out a violation of her Fourteenth Amendment rights and will be
20   entitled to relief under § 1983 if she can prove that a Kress employee, in the course of employment,
21   and a Hattiesburg policeman somehow reached an understanding to deny Miss Adickes service in
22   The Kress store . . . .").[50]   The existence of a conspiracy can be proved through circumstantial

---

[48]   The *Tarkanian* majority indicated that the NCAA's directive to UNLV, and the fact
that UNLV decided to follow that directive, did not establish that the NCAA and UNLV
conspired (for purposes of showing that the NCAA acted under color of state law).   *See*
*Tarkanian*, 488 U.S. at 197 n.17.

[49]   In *Cruz v. Donnelly*, 727 F.2d 79 (3d Cir. 1984), "two police officers, acting at the
request of [a private] company's employee, stripped and searched the plaintiff for stolen goods,"
*id.* at 79.   Because the court in *Cruz* found no indication that the store employee exercised control
over the officers, *Cruz* does not address the issue discussed in the text. *See id.* at 81 ("Cruz'
allegations depict only a police investigation that happens to follow the course suggested by
comments from a complainant.").

[50]   *See also Cruz*, 727 F.2d at 81 ("[A] store and its employees cannot be held liable under
§ 1983 unless: (1) the police have a pre-arranged plan with the store; and (2) under the plan, the
police will arrest anyone identified as a shoplifter by the store without independently evaluating
the presence of probable cause."); *Max v. Republican Committee of Lancaster County*, 587 F.3d
198, 203 (3d Cir. 2009) ("Even if we accept the premise that poll-workers are state actors while
guarding the integrity of an election, the defendants here ... are not the poll-watchers. Defendants
here are private parties.... At most, defendants used the poll-workers to obtain information. This
is not the same as conspiring to violate Max's First Amendment rights.").

1    evidence. *See, e.g., Adickes*, 398 U.S. at 158 ("If a policeman were present, we think it would be
2    open to a jury, in light of the sequence that followed, to infer from the circumstances that the
3    policeman and a Kress employee had a 'meeting of the minds' and thus reached an understanding that
4    petitioner should be refused service.").[51]
5
6          The Third Circuit has suggested that the plaintiff must establish the elements of a civil
7    conspiracy in order to use the existence of the conspiracy to demonstrate state action. *See Melo v.*
8    *Hafer*, 912 F.2d 628, 638 n.11 (3d Cir. 1990) (addressing plaintiff's action-under-color-of-state-law
9    argument and "assum[ing], without deciding, that the complaint alleges the prerequisites of a civil
10   conspiracy"), *aff'd on other grounds*, 502 U.S. 21 (1991). The *Melo* court cited a Seventh Circuit
11   opinion that provides additional detail on those elements. *See Melo*, 912 F.2d at 638 & n.11 (citing
12   *Hampton v. Hanrahan*, 600 F.2d 600, 620-21 (7th Cir. 1979), *rev'd in part on other grounds*, 446
13   U.S. 754 (1980)). *Melo*'s citation to *Hampton* suggests that the plaintiff must show both a
14   conspiracy to violate the plaintiff's federal rights and an overt act in furtherance of the conspiracy
15   that results in such a violation. *See Hampton*, 600 F.2d at 620-21 (discussing agreement and overt
16   act requirements). Of course, in order to find liability under Section 1983, the jury must in any event
17   find a violation of the plaintiff's federal rights; and it will often be the case that the relevant act in
18   violation of the plaintiff's federal rights would necessarily have constituted an action by a co-
19   conspirator in furtherance of the conspiracy. This may explain why the Supreme Court's references
20   to the "conspiracy" test do not emphasize the overt-act-resulting-in-violation requirement. *See, e.g.,*
21   *Adickes*, 398 U.S. at 152.
22
23         In appropriate cases, the existence of a conspiracy may also establish that a federal official
24   was acting under color of state law. *See Hindes v. F.D.I.C.*, 137 F.3d 148, 158 (3d Cir. 1998)
25   ("[F]ederal officials are subject to section 1983 liability when sued in their official capacity where
26   they have acted under color of state law, for example in conspiracy with state officials.").

---

[51] In *Startzell v. City of Philadelphia*, 533 F.3d 183 (3d Cir. 2008), the Court of Appeals
upheld the grant of summary judgment dismissing conspiracy claims under 42 U.S.C. §§ 1983
and 1985 because the plaintiffs failed to show the required "meeting of the minds." *See Startzell*,
533 F.3d at 205 ("Philly Pride and the City 'took diametrically opposed positions' regarding how
to deal with Appellants' presence at OutFest.... The City rejected Philly Pride's requests to
exclude Appellants from attending OutFest; moreover, the police forced the Pink Angels to allow
Appellants to enter OutFest under threat of arrest. It was also the vendors' complaints, not
requests by Philly Pride, that led the police officers to order Appellants to move toward OutFest's
perimeter."). *See also Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d
159, 179 (3d Cir. 2010) (holding that plaintiff's proposed amended complaint failed to plead
"any facts that plausibly suggest a meeting of the minds" between the defendants and state-court
judges who allegedly hoped for future employment with one of the defendants).

-23-

1    **4.6.6**                          **Section 1983 –**
2              **Liability in Connection with the Actions of Another –**
3                        **Municipalities – Custom**
4
5    **Model**
6
7         [Plaintiff] may prove the existence of an official custom by showing the existence of a
8    practice that is so widespread and well-settled that it constitutes a standard operating procedure of
9    [municipality].  A single action by a lower level employee does not suffice to show an official
10   custom.  But a practice may be an official custom if it is so widespread and well-settled as to have
11   the force of law, even if it has not been formally approved.  [You may find that such a custom
12   existed if there was a practice that was so well-settled and widespread that the policymaking officials
13   of [municipality] either knew of it or should have known of it.[62] [I instruct you that [*name official(s)*]
14   [is] [are] the policymaking official[s] for [*describe particular subject*].[63]]]
15
16        If you find that such an official custom was the cause of and the moving force behind the
17   violation of [plaintiff's] [specify right], then you have found that [municipality] caused that
18   violation.
19
20
21   **Comment**
22
23        Even in the absence of an official policy, a municipality may incur liability if an official
24   custom causes a constitutional tort.  *See Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir.
25   1996).[64] "Custom . . . can be proven by showing that a given course of conduct, although not
26   specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute
27   law." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990); *see also Board of County Com'rs of
28   Bryan County, Okl. v. Brown*, 520 U.S. 397, 404 (1997) ("[A]n act performed pursuant to a 'custom'

---

[62]  In cases where the plaintiff must show deliberate indifference on the part of a policymaking official, this language should be modified accordingly.  See Comment.

[63]  This language can be used if the plaintiff introduces evidence concerning a specific policymaking official.  For a discussion of whether the plaintiff must introduce such evidence, see Comment.

[64]  "A § 1983 plaintiff . . . may be able to recover from a municipality without adducing evidence of an affirmative decision by policymakers if able to prove that the challenged action was pursuant to a state 'custom or usage.'"  *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 n.10 (1986) (plurality opinion); *see also Anela v. City of Wildwood*, 790 F.2d 1063, 1069 (3d Cir. 1986) ("Even if the practices with respect to jail conditions also were followed without formal city action, it appears that they were the norm. The description of the cells revealed a long-standing condition that had become an acceptable standard and practice for the City.").

-38-

1   that has not been formally approved by an appropriate decisionmaker may fairly subject a
2   municipality to liability on the theory that the relevant practice is so widespread as to have the force
3   of law.").
4
5           As these statements suggest, evidence of a single incident without more will not suffice to
6   establish the existence of a custom: "A single incident by a lower level employee acting under color
7   of law . . . does not suffice to establish either an official policy or a custom. However, if custom can
8   be established by other means, a single application of the custom suffices to establish that it was
9   done pursuant to official policy and thus to establish the agency's liability." *Fletcher v. O'Donnell*,
10  867 F.2d 791, 793 (3d Cir. 1989) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808 (1985) (plurality
11  opinion)). For example, plaintiff can present evidence of a pattern of similar incidents and
12  inadequate responses to those incidents in order to demonstrate custom through municipal
13  acquiescence. *See Beck*, 89 F.3d at 972 ("These complaints include the Debold incident, which,
14  although it occurred after Beck's experience, may have evidentiary value for a jury's consideration
15  whether the City and policymakers had a pattern of tacitly approving the use of excessive force.").
16
17          The weight of Third Circuit caselaw indicates that the plaintiff must make some showing that
18  a policymaking official knew of the custom and acquiesced in it. Language in *Jett v. Dallas*
19  *Independent School District*, 491 U.S. 701 (1989), could be read to contemplate such a requirement,
20  though the *Jett* Court did not have occasion to consider that issue in detail.[65]  In a number of

---

[65] In *Jett*, the Court remanded for a determination of whether the school district
superintendent was a policymaking official for purposes of the plaintiff's claims under 42 U.S.C.
§ 1981. The Court instructed that on remand Section 1983's municipal-liability standards would
govern. *See id.* at 735-36. "Once those officials who have the power to make official policy on a
particular issue have been identified, it is for the jury to determine whether their decisions have
caused the deprivation of rights at issue by policies which affirmatively command that it
occur . . . , or by acquiescence in a longstanding practice or custom which constitutes the
'standard operating procedure' of the local governmental entity." *Id.* at 737 (quoting *Pembaur v.
Cincinnati*, 475 U.S. 469, 485-87 (1986) (White, J., concurring in part and in the judgment)).
Though this language suggests an expectation that a custom analysis would depend on a
policymaker's knowledge and acquiescence, such a requirement was not the focus of the Court's
opinion in *Jett*. Moreover, the *Jett* Court's quotation from Justice White's partial concurrence in
*Pembaur* is somewhat puzzling. In *Pembaur* the Court held "that municipal liability may be
imposed for a single decision by municipal policymakers under appropriate circumstances."
*Pembaur*, 475 U.S. at 480. Because *Pembaur* focused on instances where a policymaker directed
the challenged activity, municipal liability under the "custom" theory was not at issue in the case.
*See id.* at 481 n.10 (plurality opinion). Justice White's *Pembaur* concurrence does not suggest
otherwise; the language quoted by the *Jett* Court constitutes Justice White's explanation of his
reasons for agreeing that the policymakers' directives in *Pembaur* could ground municipal
liability. Justice White explained:

       The city of Cincinnati frankly conceded that forcible entry of third-party property

-39-

1    subsequent cases, the Court of Appeals has read *Jett* to require knowledge and acquiescence. In
2    *Andrews v. City of Philadelphia*, 895 F.2d 1469 (3d Cir. 1990), the Court of Appeals affirmed the
3    grant of j.n.o.v. in favor of the City on the plaintiffs' Section 1983 claims of sexual harassment by
4    their coworkers and supervisors. The court stressed that to establish municipal liability "it is
5    incumbent upon a plaintiff to show that a policymaker is responsible either for the policy or, through
6    acquiescence, for the custom." *Id.* at 1480. Thus, "given the jury verdict in favor of [Police
7    Commissioner] Tucker, the lowest level policymaker implicated," j.n.o.v. for the City was
8    warranted. *Id.* at 1480; *see also Jiminez v. All American Rathskeller, Inc.*, 503 F.3d 247, 250 (3d
9    Cir. 2007) (citing *Andrews* with approval). In *Simmons v. City of Philadelphia*, 947 F.2d 1042 (3d
10   Cir. 1991), a fractured court affirmed a judgment in favor of the mother of a man who committed
11   suicide while detained in a city jail. *See id.* at 1048. Judge Becker, announcing the judgment of the
12   court, viewed *Jett* as holding "that even when a plaintiff alleges that a municipal custom or practice,
13   as opposed to a municipal policy, worked a constitutional deprivation, the plaintiff must both
14   identify officials with ultimate policymaking authority in the area in question and adduce
15   scienter-like evidence – in this case of acquiescence – with respect to them." *Simmons*, 947 F.2d at
16   1062 (opinion of Becker, J.). Chief Judge Sloviter wrote separately to stress that officials' reckless
17   disregard of conditions of which they should have known should suffice to meet the standard, *see*
18   *id.* at 1089-91 (Sloviter, C.J., concurring in part and in the judgment), but she did not appear to
19   question the view that some sort of knowledge and acquiescence was required. Citing *Andrews* and
20   *Simmons*, the court in *Baker v. Monroe Township*, 50 F.3d 1186 (3d Cir. 1995), held that the
21   plaintiffs "must show that a policymaker for the Township authorized policies that led to the
22   violations or permitted practices that were so permanent and well settled as to establish
23   acquiescence," *id.* at 1191.[66] *See also Kneipp v. Tedder*, 95 F.3d 1199, 1212 (3d Cir. 1996) ("[A]

> to effect otherwise valid arrests was standard operating procedure. There is no
> reason to believe that respondent county would abjure using lawful means to
> execute the capiases issued in this case or had limited the authority of its officers
> to use force in executing capiases. Further, the county officials who had the
> authority to approve or disapprove such entries opted for the forceful entry, a
> choice that was later held to be inconsistent with the Fourth Amendment.
> Vesting discretion in its officers to use force and its use in this case sufficiently
> manifested county policy to warrant reversal of the judgment below.

*Pembaur*, 475 U.S. at 485 (White, J., concurring in part and in the judgment). Thus, the *Jett*
Court's quote from Justice White's *Pembaur* opinion further supports the inference that the *Jett*
Court did not give sustained attention to the contours of the custom branch of the municipal-
liability doctrine.

[66] The *Baker* plaintiffs failed to show that the municipal police officer on the scene was a
policymaker and failed to introduce evidence concerning municipal practices, and thus the court
held that their claims against the city concerning the use of guns and handcuffs during a search
were properly dismissed. *See id.* at 1194; *see also id.* at 1195 (upholding dismissal of illegal
search claims against city due to lack of evidence "that Monroe Township expressly or tacitly

1  prerequisite to establishing [municipal] liability ... is a showing that a policymaker was responsible
2  either for the policy or, through acquiescence, for the custom.").
3
4  Though it thus appears that a showing of knowledge and acquiescence is required, a number
5  of cases suggest that actual knowledge need not be proven.[67] Rather, some showing of constructive
6  knowledge may suffice; this view is reflected in the first bracketed sentence in Instruction 4.6.6. For
7  example, the court seemed to approve a constructive-knowledge standard in *Bielevicz v. Dubinon*,
8  915 F.2d 845 (3d Cir. 1990). Citing *Andrews* and *Jett*, the court stated that the "plaintiff must show
9  that an official who has the power to make policy is responsible for either the affirmative
10 proclamation of a policy or acquiescence in a well-settled custom." *Bielevicz*, 914 F.2d at 850.[68]
11 But the *Bielevicz* court took care to note that "[t]his does not mean ... that the responsible
12 decisionmaker must be specifically identified by the plaintiff's evidence.  Practices so permanent
13 and well settled as to have the force of law [are] ascribable to municipal decisionmakers." *Id.*
14 (internal quotation marks omitted).[69] The *Bielevicz* court then proceeded to discuss ways of showing
15 that the municipal custom caused the constitutional violation, and explained that policymakers'
16 failure to respond appropriately to known past violations could provide the requisite evidence of
17 causation: "If the City is shown to have tolerated known misconduct by police officers, the issue
18 whether the City's inaction contributed to the individual officers' decision to arrest the plaintiffs
19 unlawfully in this instance is a question of fact for the jury." *Id.* at 851.  In *Beck v. City of*

---

authorized either of the searches").

[67] In *Andrews*, the court suggested that Police Commissioner Tucker's lack of actual knowledge was significant to the court's holding that the municipal-liability claim failed: "[A]lthough Tucker reviewed the decision made by AID with respect to plaintiffs' complaints, he personally did not observe or acquiesce in any sexual harassment, and he was not convinced that the AID decisions were motivated by sexual animus ...." 895 F.2d at 1481.  However, the court also noted that "[t]his is not a case where there was a longstanding practice which was completely ignored by the policymaker who was absolved by the jury," *id.* at 1482 – a caveat that suggests the possibility that in such a case constructive knowledge might play a role in the acquiescence analysis.

[68] *See also Watson v. Abington Tp.*, 478 F.3d 144, 156 (3d Cir. 2007) (citing *Bielevicz* with approval on this point). The *Watson* court's explanation of its rejection of the plaintiff's municipal-liability claim seems compatible with a constructive-knowledge standard. *See Watson*, 478 F.3d at 157 (rejecting a custom-based municipal liability claim because, inter alia, the plaintiffs failed to show "that what happened at the Scoreboard was so widespread that a decisionmaker must have known about it").

[69] See also *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996) (quoting *Bielevicz* on this point).  Similarly, in *Natale v. Camden County Correctional Facility*, 318 F.3d 575 (3d Cir. 2003), the court did not pause to identify a specific policymaking official, but rather found a jury question based on "evidence that [Prison Health Services] turned a blind eye to an obviously inadequate practice that was likely to result in the violation of constitutional rights," *id.* at 584.

-41-

*Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996), the court stated that custom can be shown when government officials' practices are "so permanent and well-settled as to virtually constitute law," *id.* (internal quotation marks omitted), and then continued: "Custom . . . may also be established by evidence of knowledge and acquiescence." *Id.*[70] In holding that the plaintiffs were entitled to reach a jury on their claims, the *Beck* court focused on evidence "that the Chief of Police of Pittsburgh and his department knew, or should have known, of Officer Williams's violent behavior in arresting citizens," *id.* at 973 – suggesting that the *Beck* court applied a constructive-knowledge test. Likewise, in *Berg v. County of Allegheny*, 219 F.3d 261 (2000), the court focused on whether municipal policymakers had either actual or constructive knowledge of the practice for issuing warrants. *See id.* at 276 ("We believe it is a more than reasonable inference to suppose that a system responsible for issuing 6,000 warrants a year would be the product of a decision maker's action or acquiescence.").

The *Berg* court stated, however, that where the custom in question does not itself *constitute* the constitutional violation – but rather is alleged to have led to the violation – the plaintiff must additionally meet the deliberate-indifference test set forth in *City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989):[71] "If ... the policy or custom does not facially violate federal law, causation can be

[70] This language might be read to suggest that knowledge and acquiescence are merely one option for establishing a municipal custom. Likewise, in *Fletcher v. O'Donnell*, 867 F.2d 791 (3d Cir. 1989), the court, writing a few months before *Jett* was decided, stated that "[c]ustom may be established by proof of knowledge and acquiescence," *Fletcher*, 867 F.2d at 793-94 (citing *Pembaur*, 475 U.S. at 481-82 n.10 (plurality opinion)) – an observation that arguably suggests there may also exist other means of showing custom. As discussed in the text, however, the *Beck* court seemed to focus its analysis on the question of actual or constructive knowledge.

[71] Similarly, when he advocated a "scienter" requirement in *Simmons*, Judge Becker noted that he did not intend "to exclude from the scope of scienter's meaning a municipal policymaker's deliberately indifferent acquiescence in a custom or policy of inadequately training employees, even though 'the need for more or different training is [very] obvious, and the inadequacy [quite] likely to result in the violation of constitutional rights.'" *Simmons*, 947 F.2d at 1061 n.14 (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)). Judge Becker's opinion did not provide details on the application of this standard to the *Simmons* case, because he found that the City had waived "the argument that plaintiff failed to establish the essential 'scienter' element of her case." *Id.* at 1066. Chief Judge Sloviter wrote separately to explain, inter alia, her belief "that Judge Becker's emphasis on production by plaintiff of 'scienter-like evidence' when charging a municipality with deliberate indifference to deprivation of rights may impose on plaintiffs a heavier burden than mandated by the Supreme Court or prior decisions of this court." *Id.* at 1089 (Sloviter, C.J., concurring in part and in the judgment). Chief Judge Sloviter stressed "that liability may be based on the City's (i.e., policymaker's) reckless refusal or failure to take account of facts or circumstances which responsible individuals should have known," *id.* at 1090, and she pointed out that a standard requiring "actual knowledge of the conditions by a municipal policymaker ... would put a premium on blinders," *id.* at 1091.

-42-

1    established only by 'demonstrat[ing] that the municipal action was taken with "deliberate
2    indifference" as to its known or obvious consequences.'" *Berg*, 219 F.3d at 276 (quoting *Board of*
3    *County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 407 (1997)); *see also Natale v. Camden*
4    *County Correctional Facility* 318 F.3d 575, 585 (3d Cir. 2003) (finding a jury question on municipal
5    liability because "the failure to establish a policy to address the immediate medication needs of
6    inmates with serious medical conditions creates a risk that is sufficiently obvious as to constitute
7    deliberate indifference to those inmates' medical needs"). Where a finding of deliberate indifference
8    is required, the first bracketed sentence in Instruction 4.6.6 should be altered accordingly. Cases
9    applying a deliberate-indifference standard for municipal liability often involve allegations of failure
10   to adequately train, supervise or screen, *see, e.g.*, *Montgomery v. De Simone*, 159 F.3d 120, 126-26
11   (3d Cir. 1998) ("[A] municipality's failure to train police officers only gives rise to a constitutional
12   violation when that failure amounts to deliberate indifference to the rights of persons with whom the
13   police come into contact."). In cases where plaintiff seeks to establish municipal liability for failure
14   to adequately train or supervise a municipal employee, the more specific standards set forth in
15   Instruction 4.6.7 should be employed; Instruction 4.6.8 should be used when the plaintiff asserts
16   municipal liability for failure to screen.

Exhibit   D

Plaintiff's Pretrial Memorandum submitted

on February 5th 2018

Frankford Ave, Philadelphia, PA 19125 were being protected by way of an announcement guaranteed to be made by the Bank's Attorney listed on the writ. Due to the fact, the Attorney on the writ for the Bank does not appear at the Philadelphia Sheriff Sale, Plaintiff Porter contacts family's Attorney who emails to Plaintiff Porter instructions of what to say, in the event the sale still proceeds without the Attorney on the Writ.

Immediately prior to any bidding on the property, Plaintiff Porter begins to read out loud the e-mail sent by Porter's family counsel. Before Plaintiff Porter could finish the three sentences instructed to be read by Plaintiff Porter's family counsel, Plaintiff Porter was grabbed on the arm by the Director of Legal Services for the Philadelphia Sheriff Department and also grabbed from behind the neck at the collar by the Head of the Real Estate Division of the Philadelphia Sheriff Department with instructions to leave you're not allowed to make announcements at a Philadelphia Sheriff Sale." Plaintiff Porter refused to leave stating he has a Constitutional Right to be present and speak at which a directive by way of a nod, was given to plain clothes sheriff deputies coming from behind and placing hands on Plaintiff Porter at the elbows, while a hand-held stun gun was administered into Plaintiff Porter's side.   Plaintiff Porter was arrested and charged with ten different charges. Three and a half years later, at the conclusion of a jury trial, Plaintiff Porter was found guilty of only the charge of resisting arrest.

Plaintiff Porter seeks compensatory damages incurred by the policy/custom from the City of Philadelphia's Sheriff's Department employees under 42 U.S.C. § 1983 (Count I and Count II and Count V) protecting Plaintiff Porter's Federal Constitutional Rights under the 1st, 4th and 14th amendment of the United States Constitution. In addition, Plaintiff Porter seeks damages for

2

Count III Excessive Force against Defendants Chew, Stewart, Buscillo and Bengochea and the

state claim Count XI of Civil Conspiracy against Defendants Chew, Stewart, Buscillo, Bengochea.

## II.   WITNESSES

The following Witnesses may be called to testify regarding liability and/or damages for the

Federal Trial schedule to begin on April 2, 2018 for case #13-2008 before the Honorable Judge

Baylson for the Eastern District of Pennsylvania.

*Call witness Marker Afternoon Come at 9:30*

West Palm Beach, Fl. 19116

Southampton, PA.. 18966

Philadelphia, PA. 19116

*yes*

Philadelphia Police Department

Philadelphia, PA. 19119

*monday Afternoon*

Hot Springs, AR. 71913

*Damages*

Santa Clara, CA. 95054

Philadelphia, PA. 19116

*yes*

Philadelphia Police Department

Philadelphia, PA. 19131-1229

3

*Mr Chew
Mrs Sankowski
Dr Sam  } Fourth monday morning*

## Certificate of Service

I, James E. Porter, as a pro-se Plaintiff certify I declare under penalty of perjury that the, EMERGENCY MOTION FOR RECONSIDERATION TO INCLUDE COUNT II MONELL CLAIM UNDER 42 U.S.C. § 1983 AND COUNT XI CIVIL CONSPIRACY OF THE COMPLAINT BEING PART OF THIS TRIAL AND THE PROPOSED CHARGES AND JURY VERDICT FORM PROVIDED BY PLAINTIFF PORTER BEING THE INSTRUCTIONS TO THE JURY FOR DAMAGES, has been served hand delivery on April 2, 2018

Shannon Zabel

City of Philadelphia Law Department

 1515 Arch Street, 14 Fl

Philadelphia, PA. 19103

 Attorney for Defendants

United States District Court

Eastern District of Pennsylvania

Clerks Office Room 2609

Philadelphia, Pennsylvania

Att: Steve Tomas

Brian J. Zeiger Esquire

Levin & Zeiger LLP

Two Penn Center, Suite 620
Philadelphia, PA. 19109

Philadelphia, PA. 19102

Attorney for Plaintiff Marilynn Sankowsi

James E. Porter Sr.

121 Knollwood Lodge Rd.

Hot Springs, AR. 71913

501 693-4208

Email: porterbuilt@aol.com

Dated: April 2, 2018

Pro-Se Plaintiff

James E. Porter Sr.